# NORTHERN PACIFIC RAILROAD COMPANY *v.* LEWIS.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.**

No. 166. Argued March 24, 1896. — Decided April 13, 1896.

A person who, without authority, cuts wood from public lands of the United States, not mineral, or purchases such wood so cut, and leaves it, when cut or purchased, upon such public lands near a railroad, has no right of possession of, or title to, or ownership in it, and cannot maintain an action against the corporation owning such railroad for its destruction by fire caused by sparks from locomotives of the company.

THIS action was brought by the defendants in error against the railroad company to recover damages for the destruction of some 10,000 cords of wood by fire communicated to the wood by sparks from the engines of the company.

It was alleged in the amended complaint that the railroad company neglected and failed, for a long time prior to the happening of the fire, and while using and operating their railroad, to keep each side of the railroad track free from dead grass, weeds, brush and other dangerous and combustible material, as by law they were required to do, and that the company used locomotives which threw from their smokestacks large amounts of live cinders and sparks, and that the company carelessly and negligently operated and used its road, and by reason thereof, and on the 5th day of August, 1890, in Jefferson County, Montana, set fire to the grass, weeds and other combustible and dangerous material, which the defendant had negligently and carelessly allowed to remain by the side of the track, and the fire spread rapidly and consumed and destroyed the cord wood belonging to the plaintiffs, as partners, then being in Jefferson County, Montana, and along and near the railroad track, of the amount of 9400 cords, and of the value of $25,350.

The defendant by its answer denied all negligence, and denied "that on or about the date aforesaid, or on any other

day or date, the defendant set any fire which consumed or de-
stroyed any cord wood belonging to the plaintiffs or any or
either of them." The defendant also put in issue the value
of the cord wood, and alleged that whatever was lost was lost
through the contributory negligence of the plaintiffs.

The case came on for trial at the Circuit Court of the United
States for the Ninth Circuit, for the District of Montana, held
in December, 1891, and January, 1892, and resulted in a ver-
dict for the plaintiffs for the sum of $21,487.83. The company
sued out a writ of error from the United States Circuit Court
of Appeals for the Ninth Circuit, and that court affirmed the
judgment. 7 U. S. App. 254. The company then sued out a
writ of error from this court.

Upon the trial of the action the plaintiffs to maintain the
issues on their part introduced evidence tending to show that
in the month of April, in the year 1889, they entered upon a
portion of the unsurveyed public domain of the United States,
lying on the easterly slope of the Rocky Mountains, in the
county of Jefferson, State of Montana, and there chopped and
caused to be chopped about 10,000 cords of wood from the
timber then standing and growing upon such public lands;
that the wood was cut over an area of country of about three
miles, north and south, and about two by two and a half miles,
east and west; that the wood so cut was white pine, and much
of it was made of trees of less diameter than eight inches.
The plaintiffs also gave evidence that they were citizens of
the United States, and that the plaintiff, George S. Lewis, at
the date of the cutting of said wood, was a resident of Butte,
Montana, and that the other plaintiffs resided at White Sulphur
Springs in the State of Montana. It was further shown that
after the wood was cut it was drawn to a point near the rail-
road and there piled. That the place where the wood was so
piled was on the unsurveyed public lands of the United States
and about 200 yards south of the railroad operated by the
defendant.

Plaintiffs also gave evidence tending to show that they had
purchased from various parties during the summer of 1890
about 5000 cords of white pine cord wood, which had also

been cut on the public unsurveyed lands of the United States, some of it on the tract of country from which plaintiffs had cut, and the remainder was cut on the north side of the rail-road track above mentioned, and over a strip or area of country about two miles in length. Further evidence was given on the part of plaintiffs tending to show negligence on the part of the defendant either in the construction or in the management of its engines, and tending to show that the fire which destroyed the wood in question was. communicated to it as alleged in the amended complaint.

Evidence was given on the part of the defendant tending to show that it was not guilty of any negligence in the premises, and that it was not liable for the results of any fire which may have destroyed the wood in question.

At the conclusion of all the evidence, the defendant moved the court to instruct the jury to return a verdict for it upon the grounds :

"1. That the title or ownership of the wood is directly in issue, and the testimony does not show that the plaintiffs had either a general or special property in the said cord wood or any thereof.

"2. The testimony shows that at the time said cord wood was destroyed the same was the property of the United States, and that in and about the cutting and removal thereof from the public unsurveyed lands of the United States the said plaintiffs were trespassers and wrongdoers.

"3. The testimony does not show that the lands whereon the cord wood was cut were distinctly mineral in character, or were more valuable for the mineral therein contained than for agricultural purposes or for the timber growing thereon.

"4. The testimony does not show that such cord wood was cut under the license granted by the act of Congress of June 3, 1878, or in compliance with the rules and regulations established thereunder by the Secretary of the Interior, but, on the contrary, the evidence clearly shows that the said cord wood, and the whole thereof, was cut in utter disregard of said act of Congress and the said rules and regulations of the Secretary of the Interior.

" 5. Because the testimony shows that said cord wood was the property of the United States, and that plaintiffs have neither right nor title thereto nor the possession thereof."

Other grounds were stated not material to be now considered.

The court denied the motion and refused to so instruct the jury, and the defendant duly excepted.

The defendant then among other requests asked the court to charge the jury that " it being shown conclusively by the testimony in this case that plaintiffs cut said cord wood on lands belonging to the United States; that such cord wood was so cut without license or authority of the United States, and was not removed from such lands at the date it was consumed, the plaintiffs did not have either the actual or constructive possession of such wood at the date of its destruction, and are therefore not entitled to recover." This request was refused, and defendant duly excepted.

The court was further asked to charge that : " If you should find from the testimony that plaintiffs purchased some of this wood from other parties who had cut it from trees growing in that vicinity, this will make no difference so far as their right to, or ownership of, such wood is concerned. The region of country where this cutting was done being public unsurveyed lands of the United States, the plaintiffs were bound at their peril to take notice of the fact that the timber growing thereon was the property of the United States, and could only lawfully be severed therefrom under the provisions of the act of Congress of June 3, 1878, and in compliance with the rules and regulations established thereunder. In order to prove their title to so much of the wood as was purchased, it is not enough to show that they bought it of a certain named person, but plaintiffs must go further and show that the person had acquired title to it by compliance with the act of Congress and rules and regulations prescribed by the Secretary of the Interior. If the person cutting such wood was himself a trespasser, he acquired no title to the wood cut, and could convey none to plaintiffs. The rightful owner of such wood could follow it and reclaim it, no matter where, or in whose possession it might be found, so long as he could identify it."

This request the court refused, and the defendant duly excepted to such refusal.

Among many other assignments of error made by the defendant is the following: "The court also erred in refusing to give the instruction requested by the defendant in the following words, to wit: 'It being shown conclusively by the testimony in this case that plaintiffs cut said cord wood on lands belonging to the United States, that such cord wood was so cut without license or authority of the United States, and was not removed from such lands at the date when it was consumed, the plaintiffs did not have either the actual or constructive possession of such wood at the date of its destruction, and are, therefore, not entitled to recover.'"

*Mr. William J. Curtis* for plaintiff in error.

*Mr. Thomas C. Bach*, (with whom was *Mr. William Wallace, Jr.*, on the brief,) for defendants in error.

I. Plaintiffs can maintain this action. The action is one of trespass.— or trespass on the case. It was brought against a wrongdoer for its negligent destruction of the cord wood. Plaintiffs were in possession of the property when it was so destroyed, and the defendant did not seek to connect itself with the title. Under such a state of facts, the plaintiffs, by proof of their possession, also proved their title against the wrongdoing defendant. While in replevin and ejectment the rule is different, it is because right to possession is involved; and plaintiff in such cases must recover on the strength of his own title. *Lambert* v. *Stroother*, Willes, 218; *Graham* v. *Peat*, 1 East, 244; *Kissam* v. *Roberts*, 6 Bosworth, (N. Y. Super.,) 154; *Hoyt* v. *Gelaton*, 13 Johns. 141; *Cook* v. *Howard*, 13 Johns. 276; *Aikin* v. *Buck*, 1 Wend. 466; *Demick* v. *Chapman*, 11 Johns. 132; *Squire* v. *Hollenbeck*, 9 Pick. 551; *Hammer* v. *Wilsey*, 17 Wend. 91; *Parker* v. *Hotchkiss*, 25 Connecticut, 321; *Todd* v. *Jackson*, 2 Dutcher, N. J. 525; *Whittington* v. *Boxall*, 5 Q. B. 139; *Wustland* v. *Potterfield*, 9 W. Va. 438; *Craig* v. *Gilbreth*, 47 Maine, 416; *Gilson* v. *Wood*, 20 Illinois, 37; *Gardiner* v. *Thibodeau*, 14 La. Ann. 732; *Boston* v. *Neat*,

12 Missouri, 125 ; *Crawford* v. *Bynum*, 7 Yerg. 381; *Fuller* v. *Bean*, 30 N. H. 181 ; *Kemp* v. *Seely*, 47 Wisconsin, 687.

In the latter case, Orton, Judge, says : "There was no question of title in the case, nor is title necessary to maintain trespass against a stranger to the title."

The rule is the same in trover. "But a lower degree of interest will sometimes suffice against a stranger, for a mere wrongdoer is not permitted to question the title of a person in the actual possession and custody of the goods whose possession he has wrongfully invaded." Greenleaf on Ev. § 639.

See also to same effect, as to action of trover : *Ward* v. *Carson R. Wood & Co.*, 13 Nevada, 44; *Jeffries* v. *Great Western Railway Co.*, 34 Eng. L. and Eq. 122 ; *Bartlett* v. *Hoyt*, 29 N. H. 317; *Burke* v. *Savage*, 13 Allen, 408 ; *Shaw* v. *Kaler*, 106 Mass. 448 ; *First Parish in Shrewsbury* v. *Smith*, 14 Pick. 297, 302 ; *Sutton* v. *Buck*, 2 Taunt. 302; *Duncan* v. *Spear*, 11 Wend. 54, 57 ; *Wincher* v. *Shrewsbury*, 2 Scammon (Ill.) 283.

Were right of recovery denied the possessor for injury to his possession, the law of "might" alone would be applicable to personal property after it had tortiously passed out of the hands of the true owner. If ores extracted by the miner from a claim defectively located, or not located at all, were seized by a stranger, the miner would be remediless save by an appeal to force. The railroad could receive our wood, collect freight in advance, haul it to market, and then refuse to deliver it upon the plea that it would be answerable to the United States.

In *Parish* v. *Smith*, 14 Pick. 302, Chief Justice Shaw says : "It is very clear that a mere stranger cannot question the right of one in possession, or put him on the proof or disclosure of his title. . . . And there seems to be no reason why a stranger should be placed in a better situation, by taking the matter into his own hands, ploughing land, taking crops or otherwise interfering with the right of the party in possession. . . . If a lawful owner, in whom the legal title remains, chooses to interfere and set up his legal claims, the law, in consistency with its own rules in regard to the transmission of title, may be compelled to admit his claim. But if such owner, upon consideration of propriety, equity and conscience, chooses

to acquiesce and permit the party in possession to retain that possession, notwithstanding any defect of title, by what rule of law, of equity or sound policy, can a mere stranger be allowed to interfere and by his own act violate the actual and peaceable possession of another, and thereby compel him to disclose a title, in the validity or invalidity of which such stranger has no interest?"

See also *Gulf, C. & S. F. Railway* v. *Johnson*, 54 Fed. Rep. 474, a case which involves the same kind of trespass, the same question of ownership, the same question of illegality, as found in this case.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

The cases cited by the defendants in error show the doctrine to be quite clearly established that an action of trespass *de bonis asportatis* does not technically involve the question of title. It relates to the possession only of personal property, and it is brought to recover for the injury to that possession. In such action it is held that an allegation of the ownership of the property is not material and that it need not be made, or if made that it need not be proved. Proof of possession simply is sufficient upon the theory that possession is *prima facie* evidence of some kind of rightful ownership or title. Therefore, it is held that proof of title to property in a stranger with whom the defendant does not connect himself in any way is no defence to the action as the injury is to the possession. Trespass *de bonis asportatis* assumes a taking of the property by the defendant out of the possession of the plaintiff, and if the title be in a stranger with which the defendant does not connect himself, that fact is no answer to the cause of action. The possession of the plaintiff is enough under such circumstances against a wrongdoer. If the defendant cannot connect himself with the title in the third person, he is as to the plaintiff a wrongdoer, having no right to disturb the possession of the plaintiff. *Aikin* v. *Buck*, 1 Wend. 466; *Hammer* v. *Wilsey*, 17 Wend 91; *Kissam* v. *Roberts*, 6 Bosworth, [Superior Court

N. Y.,] 154. Many other cases are to the same effect. The rule is said to be different in trover and replevin on the theory that those actions are not actions grounded on the mere possession, but founded upon a right or title in the plaintiff upon the strength of which he must recover, and that hence title in a third party may be a defence, even though the defendant is not in any way connected with it.

But this action is not an action of trespass *de bonis asportatis.* There has been no asportation, and that fact must be proved, in such an action. The cause of action here alleged and proved was a negligent act on the part of the defendant, committed on the defendant's own land, and causing in its results the burning up and destruction of the wood in question. The action is, therefore, more accurately and properly described as an action of trespass on the case instead of trespass *de bonis asportatis.*

The ground of the plaintiffs' right of action is the damage which has been caused them by the negligent act of the defendant, and unless they are able to prove some damage, consequent upon such negligent act, the plaintiffs are not entitled to recover. This is not an action where they would be entitled to nominal damages if no damages whatever were in fact sustained or proved. They must prove the nature and extent of the damage, and if the property destroyed were not owned by them, and if they had no special property therein, and did not have possession thereof, it is entirely plain that no cause of action was proved. The plaintiffs claim that, so far as the defendant is concerned, they did prove property in the wood, and that such proof was made by showing that they were in possession thereof at the time of its destruction, and as simple possession is *prima facie* evidence of right and title sufficient to support this action, the plaintiffs made out their case. It may be assumed that possession alone is sufficient, even in an action of this nature, in the absence of any evidence explaining that possession or showing that plaintiffs had no title to the property. In this case the plaintiffs, in the course of making out their cause of action, showed the facts which proved that they had neither the title nor the possession.

The bill of exceptions states that the wood was cut upon the unsurveyed public lands of the United States. The lands were owned by the United States, and the trees growing thereon were its absolute property as much so as any other article of property possessed by the government. Entering upon those lands by the plaintiffs for the purpose of cutting trees was a plain act of trespass, illegal in its nature, and unjustified by any fact appearing in this case. The plaintiffs in cutting down trees committed an illegal act, and while the title to the standing timber was in the United States, the plaintiffs by severing the trees from the freehold acquired no right, title or interest in them by reason of such severance.

In *Schulenberg* v. *Harriman*, 21 Wall. 44, 64, it was held, that where title to land upon which the lumber was cut was in the State, severing the timber from the realty did not change the title. Its character was changed from realty to personalty, but its title was not affected. It continued as previously the property of the owner of the land and could be pursued wherever it was carried. All the remedies were open to the owner which the law afforded in other cases of the wrongful removal or conversion of personal property. See also *Turley* v. *Tucker*, 6 Missouri, 583. It is plain, therefore, that the plaintiffs obtained no right or title to the trees by cutting them on the lands owned by the United States under circumstances such as are set forth in this bill of exceptions.

It is urged, however, that under the act of June 3, 1878, c. 150, 20 Stat. 88, (1 Supp. Rev. Stat. 1874–1881, 327,) where no evidence is given upon the subject, the presumption is that the plaintiffs had complied with the provisions of that act, and that the cutting was therefore legal, and the timber was their own property.

The first section of that act reads as follows:

"SEC. 1. *Be it enacted, etc.*, That all citizens of the United States and other persons, *bona fide* residents of the State of Colorado or Nevada, or either of the Territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and permitted to fell and remove,

for building, agricultural, mining or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral and not subject to entry under the existing laws of the United States, except for mineral entry, in either of said States, Territories or districts of which such citizens or persons may be at the time *bona fide* residents, subject to such rules and regulations as the Secretary of the Interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes : *Provided*, The provisions of this act shall not extend to railroad corporations."

The third section of that act reads as follows :

" Sec. 3. Any person or persons who shall violate the provisions of this act, or any rules or regulations in pursuance thereof made by the Secretary of the Interior, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not exceeding five hundred dollars, and to which may be added imprisonment for any term not exceeding six months."

There was no evidence tending to show that the lands where the wood was cut were mineral, or that in cutting, handling or removing the wood the plaintiffs had complied or attempted to comply with the provisions of the above act or with the rules or regulations prescribed by the Secretary of the Interior.

The plaintiffs claim that in the absence of any evidence to the contrary, the presumption is that when they cut the timber they complied with and came under the conditions provided for in the above cited act, and that the burden rested upon the defendant to show that the conditions mentioned in the act had not been complied with by them.   If the plaintiffs are right in this contention, then it must be presumed that the cutting of the timber was lawful and the plaintiffs thereby acquired title to it.   If, however, they are in error in their claim, then it appears that the timber never belonged to them, and that fact would have a most material bearing upon the question whether they had, in fact or in law, any possession of the timber at the time of its destruction.

The absolute ownership of these lands being at the time in the United States, it had as owner the same right and dominion over them as any owner would have. No one had the right to enter upon the lands; no one had the right to cut a stick of timber thereon without its consent. Any one so going upon the lands and cutting timber would be guilty of the commission of an act of trespass. The government, however, chose to make some exceptions in favor of certain classes of people to whom were given the right to cut timber for certain purposes: 1st. They were to be citizens of the United States. 2d. *Bona fide* residents of the State or Territory mentioned in the act. 3d. They were to be permitted to fell and remove any timber or trees growing or being on the public lands, provided they were mineral, and not subject to entry under existing laws of the United States; and they were authorized and permitted to fell and remove such timber only for building, agricultural, mining or other domestic purposes. The cutting and removing were to be done under rules and regulations prescribed by the Secretary of the Interior. Outside of these exceptions, there was no right in any person to cut a particle of timber on these public lands of the government.

The right to cut is exceptional and quite narrow, and for specified purposes only. The broad general rule is against the right. If the plaintiffs had acquired the right by reason of a compliance with the provisions of the statute, the facts should have been shown by them. The presumption in the absence of evidence is that the cutting is illegal. *United States* v. *Cook*, 19 Wall. 591.

In the case last cited it was held that the timber upon the lands occupied by the Indians could not be cut by them for purposes of sale alone, but that it could be cut for the purpose of improving the land and the better adapting it to convenient occupation, and that when the timber had been cut incidentally for the improvement of the land, and not for the purpose of cutting and selling it, there was no restriction on the sale of it. The Indians having only the right of occupancy in the lands, and, therefore, presumptively no right to cut timber for the purpose of selling, it was further held that if they cut

timber in the process of improving the land, that fact must be shown ; the presumption was against the authority to cut and sell the timber.   Every purchaser from them, it was held, was charged with notice of this presumption, and that to maintain his title it was incumbent on the purchaser to show that the timber was rightfully severed from the land.   So here.   As the government was the sole and absolute owner of these lands and of the timber growing thereon, the presumption would be against the right of any third person to cut the timber, and if he claimed the right by virtue of any authority or license given him by the owner, that is, the government, he would be compelled to show it.   There was no evidence given on this subject by either party, and hence the plaintiffs did not satisfy the burden of proof which rested upon them in this behalf.

Again, the consent to cut timber granted by the act of 1878 being upon the conditions and for the purposes therein specified and to the classes of persons therein described, whether the plaintiffs, who did this cutting, had complied with those conditions and had cut timber for the purposes mentioned, and were within the class of persons described in the statute, were facts which rested peculiarly within their own knowledge, the burden of showing which would naturally and rightfully be cast upon them.   As the plaintiffs failed to show that they came within the conditions and exceptions specified in the act of 1878, the presumption that they cut the timber illegally became conclusive.   Nor did the plaintiffs obtain any rights under section 8 of the laws of Congress, approved March 3, 1891, c. 561, entitled " An act to repeal timber culture law and for other purposes."   26 Stat. 1095.   That section was amended by the act approved on the same day, March 3, 1891, c. 559, Ibid. 1093.   Neither section grants any relief to one situated like the plaintiffs.   The section in either act looks to a criminal prosecution or civil action by the United States for trespass upon public timber lands to recover for the timber and lumber cut thereon, and it is provided that it should be a defence if the defendant should show that the timber was so cut or removed by a resident of the

State or Territory for agricultural, mining, manufacturing or domestic purposes, and had not been transported out of the same. If the plaintiffs had shown these facts they would have proved enough to sustain their case on this point. They showed nothing upon the subject. It is not a case of condonation. It is simply a question whether the plaintiffs have brought themselves within any of the exceptions provided for in the statute of 1878, and we hold that the burden was upon them to show the facts which constituted the exception if they existed.

We have then an act of pure trespass, committed by the plaintiffs in entering upon the lands of the government and cutting down trees belonging to the owner of such lands. We find that the title to the timber was in the government before it was cut, and that the title remained in the government subsequently to the cutting. The plaintiffs still being trespassers, still being utterly without title to the wood thus cut, changed its situs from one part of the land belonging to the government to another part of the land belonging to the same owner. The plaintiffs in going or being upon the land at all for the purpose of illegally cutting or removing timber are trespassers; they neither own it nor claim to own it, nor have they the slightest title to or interest in it, nor any ownership of or title to the timber which they have illegally cut. They have carried property which did not belong to them, which they acquired and took by means of this trespass, from one part of the owner's domain to another part thereof. Can they be said under such circumstances to be in possession of such property? Can they be in possession of property to which they have not the slightest title, while that property remains upon the land of the owner, from which land the trees were cut, and upon which land the plaintiffs could not (for the purpose of illegally cutting or removing timber) enter or remain for one moment without the commission of a trespass? These facts being proved, is there any such possession as is *prima facie* evidence of title, right or ownership in the plaintiffs such as will enable them to maintain an action against a wrongdoer for the negligent destruction of this

property? We think not. It is not a case for the application of the principle that mere possession is sufficient in order to maintain an action against a wrongdoer. There is no possession in this case. The plaintiffs in the course of their evidence show that they have no title to the wood, and at the same time they show that they were not in possession of it. As the wood in question belonged to the United States at the time of its destruction, and at that time was piled on its own lands, we fail to see why the government could not now commence an action against the company to recover the value of the wood, and if negligence were proved succeed in its suit. If plaintiffs' action could be sustained, the judgment herein would be no bar to the maintenance of an action by the government, and the company would find itself subject to the payment of damages twice over. It seems to us quite clear that the plaintiffs have shown no such possession as would be necessary to sustain this action, even if the defendant were not permitted to show title in a third person without connecting itself with the stranger. It is unnecessary to say whether the plaintiffs would have proved a good cause of action by proof of possession merely, if the facts in regard to the illegal character of the cutting had also been proved.

A reference to a few cases in the state courts will not be out of place.

In the case of *Turley* v. *Tucker*, 6 Missouri, 583, it appeared that the plaintiffs were owners of a saw mill and cut down trees on the public lands, and marked them, in convenient lengths, for their purposes. While the logs remained where felled a portion of them was taken by Tucker to his mill, and the plaintiff sued the defendant in an action of trover, for the value of the logs thus taken. The defendants requested the court to charge that if the jury found that the plaintiff cut the timber taken by the defendant, without a *bona fide* view to its use, and did not use the same, the timber being and appertaining to the public domain and lying at the place where felled, then the plaintiff was a trespasser against the United States, and could not recover against the defendant for using a part of said timber. This was refused, and on the

contrary the court instructed the jury that "although the logs might have been cut by plaintiff, on the public ground for their own use, yet they acquired such property in the logs as would enable them to maintain an action of trover for the logs against a wrongdoer." The instruction actually given was held to be erroneous. It is true the action is described as one of trover, but the principle laid down in the opinion is quite pertinent here. The court says: "The authorities are very clear that mere possession is only *prima facie* evidence of property to maintain this action against a wrongdoer." The question was, whether the plaintiff, by cutting timber on the land of the United States, acquired such possession. There was evidence which alone and unexplained tended to establish the fact of possession, but there were other facts connected with the possession which at the same time proved it to have arisen out of a tort, and that kind of possession was held to be insufficient, because the evidence, while tending to establish possession, at the same time and thereby proved an absolute property in another. In other words, the tortious possession was held to be no possession in that case. In the case at bar the title to the property was at the time of its destruction in the government; the property was then on land owned by the government; the plaintiffs had no right or title to that land, and made no claim of title to or interest in it.; and on these facts the plaintiffs cannot be held to have been in possession of the property.

In *Ohio & Mississippi Railroad* v. *Jones*, 27 Illinois, 41, it was held that to authorize one to recover for an injury to property he must show that he is the absolute or qualified owner thereof. It was stated in that case that there was no evidence that the plaintiff was the owner of the property or that he had possession of it, and that although possession might be evidence of ownership, there must be some evidence of possession. As there was none, the court reversed the judgment for the plaintiff.

In *Murphy* v. *Railroad Co.*, 55 Iowa, 473, it was held that one who, without authority, cuts and stacks hay on unenclosed prairie owned by others, acquires no property in such hay, and

having neither ownership nor possession, cannot maintain an action for its destruction. The plaintiff brought his action to recover for an alleged negligent setting fire to the prairie and permitting it to escape, thereby burning 168 tons of hay, of which the plaintiff alleged he was the owner. The answer denied that the plaintiff was the owner of the hay alleged to have been burned. The trial was by jury and resulted in a verdict for the plaintiff for the value of the hay. Respecting his ownership, the plaintiff testified that the hay was on unenclosed prairie. " The land upon which I cut this grass and stacked the hay was not mine. I had gone onto the land and cut the grass and stacked it. My claim to be owner of the hay is based on this. I cut it and put it up; that is all the claim I have. I had no license to cut or stack hay there." The defendant asked the court to instruct the jury that if it found " from the testimony that the plaintiff had cut and stacked the hay, for the burning of which he seeks to recover in this action, upon land which he did not own, and if you further find that the plaintiff had no license or permission to cut the grass upon said land, and stack the hay therefrom thereon, the title to said hay so cut and stacked was not in the plaintiff, and he cannot maintain an action to recover for the destruction thereof by fire which burned over the prairie upon which the same was stacked." This was refused. The court did instruct the jury that " in the absence of some title or right of defendant in the land upon which the grass was stacked, and from which it was grown and cut, the ownership of the hay in plaintiff, as against the defendant, is not disproved by showing that the said land from which the grass was grown and cut, and upon which it was stacked, was not the property of plaintiff, nor can the ownership of plaintiff be disproved as against defendant by showing that the plaintiff had no license or permit from the owner of the land to cut the grass, or stack the same upon the land where it was burned." The court held that upon authority as well as upon principle, as the plaintiff entered upon the land of another without license and cut grass therefrom and made hay, he acquired no property therein, and that, " as he did not own the

land upon which the hay was stacked, he had no constructive possession of it; having neither title nor possession, it seems to be a necessary consequence that he cannot recover."

This seems to be very much such a case as the one at bar. In the one case the hay was cut from land not owned by the plaintiff, and was stacked by him thereon and was destroyed by fire alleged to have been the negligent act of the defendant. In the other the wood is cut from land not owned by plaintiffs and is piled upon land not owned by them, and while thus piled is destroyed by the negligent act of the defendant; and yet it was held in the Iowa case that the plaintiff had no sufficient possession of the property destroyed to maintain the action. We see no reason why the same rule should not be applied to this case.

In *Missouri Pac. Railway* v. *Cullers*, 81 Texas, 382, the Supreme Court of Texas laid down the proposition, " that if it is established that the plaintiff was not the owner of the property and had no other interest therein than the bare possession thereof, then, where the measure of damage relied upon is the value of the property injured, destroyed or converted, in such case the defendant would not be legally liable to compensate the plaintiff for the value of property which he did not own, and ought to be permitted to prove title in a third party, not only for the purpose of disproving the plaintiff's right, or rather claim, for damages without an injury to himself, but also to avoid being compelled to respond in double damages for the same injury to the property. Until such outstanding title or a title in the defendant is established, however, the possessory right of the plaintiff is sufficient to justify a full recovery. Hence it is correctly said that the actual possession of property is *prima facie* proof of the ownership thereof, but it amounts to no more than this."

There is no actual possession in such a case as this where the property belongs to a third person, and is still on the premises of that third person, to go upon which is an act of trespass on the part of the individual claiming to be in possession of the property. Neither can any constructive possession be based upon these facts. Hence it would appear that plaintiffs had

failed to maintain their action for the wood cut by themselves.

. They do. not occupy any more advantageous position in regard to the wood purchased by them from those who had with their knowledge cut .it from the lands of the United States. Plaintiffs had the same rights only as the persons· from whom they purchased, and could maintain no action which they. could not maintain. *Wooden Ware Co.* v. *United States,* 106 U. S. 432, 435.

The persons from whom the plaintiffs purchased cut the timber under the same circumstances as the plaintiffs cut that which they claim, and such persons had the same rights that the plaintiffs had, and no more.

The court should have charged the jury as requested, both in regard to the rights of the plaintiffs at the time of the fire in and to the wood cut by them, and also as to their rights in and to the wood purchased by them from others.

The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is

*Reversed, and the cause remanded with instructions to grant a new trial.*