[Civil No. 816.   Filed March 20, 1903.]
[71 Pac. 954.]

UNITED STATES OF AMERICA, Plaintiff and Appellant, v. UNITED VERDE COPPER COMPANY, a Corporation, Defendant and Appellee.

1. PUBLIC LANDS—TIMBER—REMOVAL—MINING PURPOSES—INTERIOR DEPARTMENT — RULES AND REGULATIONS — SCOPE — ACT OF CONGRESS,

JUNE 3, 1878, 20 STATS. 88, 1 SUPP. REV. STATS. U. S. 166, (U. S. COMP. STATS. 1901, p. 1528,) CONSTRUED.—Congress, by act *supra,* having provided for the taking of timber from public mineral lands for mining purposes, subject to such regulations· as the secretary of the interior may prescribe; *held,* that the secretary may prescribe rules and regulations concerning the removal of timber, and while his interpretation of the intent of the act is entitled to weight, yet he has no power to enlarge or restrict the purposes for which timber may be used.

2. SAME—SAME—SAME—SAME—ROASTING ORES—SMELTING.—The taking of timber from public mineral lands for the purpose of ''roasting'' ores at the mine, by which ''roasting'' the ores are not fused, but the volatile substances are driven off in vapor, gases, etċ., and the ores more readily and economically smelted thereafter, is a taking for ''mining purposes'' within the purview of statute, *supra.*

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. Richard E. Sloan, Judge.   Affirmed.

Affirmed.   Opinion, 196 U. S. 207, 49 L. Ed. 449.

The facts are stated in the opinion.

Frederick S. Nave, United States Attorney, and John H. Campbell, Assistant United States Attorney, for Appellant.

By general regulations, Congress has not only not granted a license or privilege for the cutting of timber on the public lands, but has, on the contrary, expressly served notice that no such cutting is permitted.   Rev. Stats. U. S. 2461; *Northern Pacific Ry. Co.* v. *Lewis,* 162 U. S. 376, 16 Sup. Ct. 831, 40 L. Ed. 1006.

. Any person who asserts the right to cut timber must be prepared to show an express privilege, and to show that his cutting has been in compliance with all the conditions of the privilege.   *Northern Pacific Ry. Co.* v. *Lewis,* 162 U. S. 376, 16 Sup. Ct. 831, 40 L. Ed. 100ĉ.

John J. Hawkins, for Appellee.

The use of the wood for the purpose of roasting ore was strictly in accordance with the act of June 3, 1878.   *United States* v. *Richmond Min. Co.,* 40 Fed. 415.

DOAN, J.—The complaint in this action, brought by the United States against the United Verde Copper Company, a corporation, alleges that one Rafael Lopez, a citizen of the United States, and a *bona fide* resident of the territory of Arizona, between the fifteenth day of February, 1900, and the seventeenth day of April, 1901, wrongfully cut and removed from the unsurveyed public mineral lands of the United States a large amount of timber, the property of the United States, and sold the same to the defendant, and that the defendant used the timber for the purpose of roasting ore at its mines situated in the territory, in violation of act of Congress of June 3, 1878, (20 Stats. 88, 1 Supp. Rev. Stats. 166 [U. S. Comp. Stats. 1901, p. 1528],) and of the rules and regulations of the secretary of the interior promulgated under the authority of the act. A general demurrer was interposed to the complaint, and a special demurrer on the ground that the complaint alleged that the timber was used by the defendant "for the purpose of roasting ore, which the defendant had a right to do under the act," such use being "licensed and permitted by the act." The demurrer was sustained, and judgment entered thereon for the defendant.

The legal right of the United States to recover the value of the timber from the one who unlawfully cuts it, or from any purchaser of such timber, is well established. *Wooden Ware Co.* v. *United States,* 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230; *Northern Pacific R. R. Co.* v. *Lewis,* 162 U. S. 376, 16 Sup. Ct. 831, 40 L. Ed. 1002. The absolute ownership of these lands being in the United States, no one had the right to enter upon the lands, or cut timber therefrom, without its consent. The government chose to make some exceptions in favor of certain classes of people, to whom were given the right to cut timber for certain purposes. The broad general rule being against the right, and the right to cut being exceptional, for specified purposes only, such right, if acquired by the defendant by reason of a compliance with the provision of the statute, should have been shown by it. In the absence of evidence establishing such right, the presumption is that the cutting is illegal, and, as a matter of practice, a complaint simply alleging the cutting would state a cause of action; but in this instance the complaint has gone farther,

and has alleged the purposes for which, and the conditions under which, the cutting was done, thus relieving the defendant from the necessity of such showing, and has clearly presented for the consideration of the court the question whether or not timber cut from the public mineral domain may, under the terms of the act, be used for roasting ore. If such use is within the terms of the act, then the demurrer to the complaint was properly sustained. If such use is not within the terms of the act, then the complaint states a good cause of action against the defendant.

The act in question, omitting the parts not material, is 'as follows: "All citizens of the United States and other persons, *bona fide* residents of the . . . territories of . . . Arizona, . . . shall be, and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories, or districts of which such citizens or persons may be at the time *bona fide* residents, subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes." Act June 3, 1878, 20 Stats. 88, 1 Supp. Rev. Stats. 166 [U. S. Comp. Stats. 1901, p. 1528].

Under this act the secretary of the interior, on January 18, 1900, promulgated certain rules and regulations governing the felling and removing of timber from the public domain for mining and domestic purposes; such rules, so far as material, being as follows:—

"(4) The uses for which the timber may be felled or removed are limited by the wording of the act to 'building, agricultural, mining, or other domestic purposes.'

"(5) No timber is permitted to be felled or removed for purposes of sale or traffic, or to manufacture the same into lumber or other timber product as an article of merchandise, or for any other use whatsoever, except as defined in section 4 of these rules and regulations."

"(7) No timber is permitted to be used for smelting purposes, smelting being a separate and distinct industry from that of mining."

"(10) These rules and regulations shall take effect February 15, 1900, and all existing rules and regulations heretofore prescribed under said act by this department are hereby rescinded."

It will be observed that by section 7 of these rules the secretary of the interior decides that the use of timber for smelting purposes is not permitted under the license given by the above act, for the reason that smelting is a separate and distinct industry from that of mining. Under these rules this action was brought on the theory that the use of the timber for roasting ore was a use for smelting purposes, and hence prohibited.

The power and authority of the secretary of the interior to make such rules as may be proper with respect to the cutting and removal of timber under the act has been upheld by the courts. *Northern Pacific R. R. Co.* v. *Lewis,* 162 U. S. 376, 16 Sup. Ct. 831, 40 L. Ed. 1002; *United States* v. *Williams,* 6 Mont. 379, 12 Pac. 851. While the act directly clothes the secretary with the power to prescribe rules and regulations concerning the cutting and removal of timber, and his interpretation of the intent and true meaning of the act would be entitled to great weight, it will not be contended that the secretary, by any rule or regulation, has the power to enlarge or restrict the purposes expressed in the act for which such timber may be used; so that if, by the act itself, Congress has given the right to use such timber for roasting ore, any rule promulgated by the secretary that would prohibit such use would be unauthorized and illegal. We have, therefore, to consider whether such use is authorized by the act itself. The act allows such use for building, agricultural, mining, and other domestic purposes. It is apparent, therefore, that if the use of timber for roasting ore is entitled to be classed as a use for "mining purposes," such use is within the terms of the act.

We think it was the intent of Congress by this act to encourage and develop the industry of mining, and in so doing to enable miners to make free use of the timber on the mineral lands in the development of their mines, and for all purposes that may be classed under the head of mining; and that they were not restricted in such use to the employment of timber in the mine itself, but its application and use was intended

to be granted in the many ways requisite and necessary for the proper development of the industry. While it was intended that those engaged in mining, whether individuals or incorporated companies, should have the privilege to cut and use timber necessary for the development of their mines, and for purposes directly connected therewith, it was not the intention of Congress that plants erected for the independent business of smelting ores, commonly known as "custom smelters," should be allowed to make use of such timber in such enterprises, for the reason, as given by the secretary of the interior, that such business is "a separate and distinct industry from that of mining." In the only case which we have found in which this question is discussed (*United States v. Richmond Mining Co.*, 40 Fed. 415) the United States circuit court for Nevada held that the use of wood and charcoal in the reduction of ores and refining the product thereof by mill or furnace process, if not strictly a mining use, was certainly a use incident to mining, and closely connected with it. Those engaged in reducing ores within the state were therein held to be within the benefits conferred by the above statute, and entitled to use wood or timber cut from government mineral lands for that purpose. The court in that case decided that the defendant company, a corporation, had full right to purchase wood cut from public mineral lands, and charcoal made from such wood, and use the same at its reduction works, and that the statute above cited was a complete defense to the action brought by the government against it therefor. This case was taken on writ of error to the United States supreme court, but was there dismissed on motion of the plaintiff in error without a review of the same, thus leaving the decision above cited the only authority we have on this question. This case was tried, however, prior to the adoption and promulgation of the rule above quoted.

We believe that the defendant in this instance was fully protected by the statute in using the wood sued for, under the license granted in the act to use wood for mining purposes, unless the roasting of ores should properly be classed as a part of the process of smelting, and is, for that reason, not included in ·the general classification of mining purposes. The complaint alleges that this wood was used by the defendant for the purpose of roasting ore at its mines in Yavapai

County, Arizona. It is a matter of common knowledge that in this territory the roasting of ores at the mines from which it is taken is ordinarily accomplished by piling the ore and the wood mingled with it in piles in the open air, and by igniting the wood the fire is communicated to the sulphurous or other combustible ingredients in the ore, and thus, by the heat generated by its own combustion and that of the wood mingled with it, the volatile substances are driven off in vapor, smoke, and gases from the ore thus treated. By this treatment the ores that are extremely sulphide or highly charged with other volatile substances are relieved from a large portion thereof, and are the more readily treated by smelting or other processes of reduction, and besides require less fluxing material for such reduction, and are also lighter in weight, and for that reason, when shipped to other points for smelting or further treatment of any kind, cost less for freight. Construing the pleading strictly against the pleader, as it is our duty to do, we must assume that the wood was not used in a custom smelter, but was used by the defendant for roasting ore obtained from its mines in the ordinary manner above described.

It is urged by the counsel for the appellant that: "Both as a matter of common knowledge and as a matter of definition of the words, 'roasting ore' is a part of the process of smelting, and the use of wood for the purpose of roasting ore as set forth in the complaint is using it for smelting purposes. Therefore, the allegation of the complaint being that the timber was used by the appellee for roasting ore, it states a proper cause of action, and is not obnoxious to demurrer." In support of this proposition he quotes the definition from the Standard Dictionary of the verbs "smelt" and "roast," as follows: "Smelt: To obtain (a metal) from the ore by a process that includes fusion; also in a more limited sense to reduce ores, sweepings, metallurgical products, etc., by fusion in a furnace." "Roast: [The only definition applicable in the discussion]: (4) Metal. To heat highly (metallic ores) with access of air, but without fusing, for the purpose of driving off or volatilizing impurities, or for oxidizing them." We think that from the authority herein cited by himself, the counsel has proven the reverse of the proposition, and that, without looking farther than the definition above, it is shown

that smelting, even in its more general sense, is the obtaining of metal from the ore by a process that includes fusion, while roasting ore is to heat highly with access of air, but without fusing; thereby distinguishing the roasting of ore from smelting, rather than including it therein. But upon looking farther we find that the definitions given by Webster are: "Smelt. 1. To melt or fuse, as ore, for the purpose of separating the metal from extraneous substances." "Roast: 5. To dissipate by heat the volatile parts of, as ores." The definitions given by Worcester are: "Smelt: 1. To melt or fuse, as ore, for the purpose of separating metal from extraneous substances." "Roast: 5. To expel volatile matters from by exposing to heat, as ores." These are the general definitions as given in the dictionaries recognized as authority by the courts and by our people generally. But in the case of *Lowrey* v. *Cowles Electric Smelting and Aluminum Co.*, 68 Fed. 354, Judge Taft, of the United States circuit court, has quoted in his decision some very full and satisfactory definitions of these terms that will be of interest in this determination. " 'Smelting,' by its derivation, is synonymous with 'melting,' but in metallurgy and the commercial manufacture it has come to have a more contracted meaning. Thus Prof. Morton, the expert for the defendant, quotes, from a treatise on metallurgy by Frederick Overman, this distinction between 'melting' and 'smelting': 'When metallic ores are exposed to heat, and such reagents as develop the metal, we call it "smelting," in contradistinction from the mere application of heat, causing the ore to become fluid, which is called "melting." ' Prof. Morton, however, is of the opinion that 'smelting' really means nothing more than 'melting apart,' and that any process in which the melting apart or separation of a metal from its ores is effected by the use of electricity is correctly described as electric smelting. . . . Prof. Langley, the expert for the complainant, thus defines 'smelt': 'The word "smelt" is customarily applied to that class of metallurgical operations in which a metal results, said metal being in a metallic condition, and obtained from an ore or mixture in which the metal originally existed in the form of a chemical compound. In all instances the operation of smelting results in producing something different from the body operated upon, and this change is brought about by the action of heat

VIII Ariz.—13

and chemical force. . . . "Smelting," then, may be said generally to indicate the melting of something by heat, accompanied by a chemical change induced by the substances present in contact with the ore. . . . The substance added to bring about a chemical change in the earthy matters of the ore are called "fluxes," and they generally consist of limestone, or of limestone and clay, so that, in the practical sense of the word, one may say the term "smelting" always involves melting by heat and the concomitant presence of a chemical change.' "

These definitions of the term "smelt," taken in connection with the fact that smelting is ordinarily accomplished by means of extensive plants erected for that purpose, and very often at great distances from the mines producing the ores smelted, while only the most extremely sulphide ores are roasted, and the roasting, when done, is frequently accomplished in a primitive manner by the combustion in the open air of the sulphur, arsenic, and more volatile portions of the ore, and in all cases, whether in the primitive manner mentioned or in reverberatory furnaces, is accomplished without any fusion or melting of the metal contained in the ore, satisfy us that the process of roasting ores, instead of being included in, is entirely different and distinct from, smelting, and the use of wood therefor is properly included among the uses authorized by the statute for "mining purposes."

Where a company extracts the ores from its mines, carries that part needing such treatment to the roasting dump, uses wood in roasting therefrom the sulphur, arsenic, and other volatile substances, and then runs the ore through its reduction plant and converts the same into a merchantable product, the extraction of the ore from the mines, the roasting it upon the dumps preparatory for its final reduction in the furnaces and other reduction plants established for that purpose, is clearly a part of mining, and the whole process of such extraction and preparation, taken together, is within the protection of the statute.

We feel that in the consideration of this subject the practical, usual, and ordinary meaning of the words "mining" and "mining purposes," etc., should govern, rather than any narrow meaning that might be argued out from the definitions given by the lexicographers. The roasting of the more sul-

phurous of the ore taken from the mine, on the dump near such mine, in order to prepare it for the operation of smelting, is as much a part of mining as the separation of the ore from the rock inclosing or surrounding it by the laborers, or the handling of such ore by machinery after having been taken from "in place." They are all steps toward taking the mineral from the elements originally mixed with it and surrounding it, and preparing it for the purposes of reduction to metal in merchantable shape. They are not a part of, or connected with, smelting, or any treatment of the ore during its reduction in the smelter. We feel that it was the intention of Congress in passing this act that it should be so construed, in order that through the license therein granted the building up of the vast mineral resources of the nation might be accomplished, and the nation at large benefited, as well as the citizens of the mining regions; and the history of mining since the passage of this act has shown the wisdom of Congress in enacting the law.

The demurrer to the complaint was properly sustained. The judgment of the lower court is therefore affirmed.

Kent, C. J., and Davis, J., concur.