**J. H. ENGELMAN, Plaintiff,**

v.

**Clell BIRD, Glenn M. Bird, and Commodore Bird, d. b. a. Salvage Lumber Company, a partnership, Defendants.**
**No. 6823–A.**

District Court, Alaska
First Division, Juneau.
Dec. 30, 1955.

Warren C. Christianson, Sitka, Alaska, and R. E. Robertson, Juneau, for plaintiff.

Robert Boochever (of Faulkner, Banfield & Boochever), Juneau, Alaska, for defendants.

HODGE, District Judge.

Plaintiff in this action seeks to recover damages for the loss in reduced value of 220 boxes of dynamite and the total loss of 203 boxes of dynamite stored by him in a powder magazine located near the town of Sitka, together with the cost of labor and materials in removing and destroying said damaged dynamite, and together also with punitive damages, all by reason of alleged unlawful, reckless or negligent conduct of the defendants in removing from one side of the magazine a heavy layer of gravel, in such manner that the corrugated metal magazine collapsed beneath the weight of the remaining gravel on the top and other side of the structure, crushing the contents.

It is admitted that the defendant Commodore Bird, acting on behalf of the above partnership and through his employees, removed the gravel as alleged; and it is also undisputed that the cause of collapse of the magazine, with resulting damage to the contents, was a structural failure resulting from the removal of the gravel from one side and the heavy load remaining on top and the other side. The defendants deny all claims of negligence and also allege contributory negligence on the part of the plaintiff. The case was tried to the Court without a jury, following which extensive briefs on points of fact and law were submitted by both parties.

The principal questions to be determined are: (1) were the defendants negligent? (2) did the plaintiff have sufficient title or right of possession in the dynamite to entitle him to recover damages? (3) if so, the measure and extent of such damages; (4) whether or not plaintiff was contributorily negligent; and (5) the matter of punitive or exemplary damages.

The evidence upon the first point turned largely upon the issue of whether or not plaintiff had erected and maintained at the time of the injury an adequate sign, warning all others of the danger of high explosives in the magazine. The plaintiff and six other witnesses testified that there was such a sign; the defendant Commodore Bird and three witnesses testified that there was none. Two of plaintiff's witnesses were employed in the cleanup of the damaged dynamite and may be considered to have had an interest in the controversy, although they denied that such interest would influence their testimony. Most impressive was the testimony of Vernon J. Joyer, District Ranger, U. S. Forest Service, having control over the magazine and the duty to inspect it for safety

measures, who had observed such sign upon his last inspection previous to the collapse; also Keith Snowden, who testified that he had erected the sign at the instance of plaintiff and that the sign was still there within a week prior to the collapse, at which time he was hauling gravel from the vicinity; also other disinterested witnesses. I find that the evidence clearly preponderates in favor of the plaintiff on this issue.

■ Moreover, even without such sign, there was sufficient evidence of negligence, or the failure to exercise due care, by the defendants in removing the gravel. For it was disclosed that no permit was obtained by the defendants from the U. S. Forest Service, whom the defendant Commodore Bird knew to be in charge of the magazine, for removal of the gravel, although he had discussed such necessity with a representative of the Bureau of Public Roads who had informed him of the availability of the gravel for road maintenance purposes. Had he done so he would have been obviously informed of the explosive contents of the magazine and the danger in removal of the supporting gravel. Under the law of torts a person may be held liable for acts dangerous intrinsically or because of the manner of performance, without using reasonable care or skill. American Law Institute, Restatement of Law of Torts, Secs. 297–302, 499.

■ Upon the question of the right of the plaintiff to recover damages for the loss of or injury to personal property for negligence there appears some conflict of authority, but principally by reason of the failure of some of the state courts to recognize the distinction between the "possession rule" as it applies to actions in trespass and actions based upon negligence. With few exceptions, however, the rule appears well established that in order to maintain an action for damage to personal property caused by the negligence of the defendant, the plaintiff must have been the general owner of the property, or have had some special property interest in it, at the time of the injury.

Northern Pacific Ry. Co. v. Lewis, 162 U.S. 366, 16 S.Ct. 831, 40 L.Ed. 1002; King v. Great Northern Ry. Co., 20 Idaho 687, 119 P. 709; Mathews v. Great Northern Ry. Co., 7 N.D. 81, 72 N.W. 1085; Lockhart v. Western & A. R. Co., 73 Ga. 472, 54 Am.Rep. 883; Murphy v. Sioux City & P. R. Co., 55 Iowa 473, 8 N.W. 320, 39 Am.Rep. 175; Annotation 150 A.L.R. 219.

The decision of the Supreme Court of the United States in the Lewis case appears to be controlling and is followed in most of the other decisions. This was a suit to recover damages for the destruction of 10,000 cords of wood cut upon the public domain, destroyed by fire due to the claimed negligence of the defendant. The opinion of the Court discusses this subject at some length and clearly makes the distinction between actions such as trespass or conversion in which cases possession only need be proven, and cases of negligence as to which it is held that the plaintiffs had no title to the wood and therefore no such lawful possession as would enable them to recover damages for its negligent destruction. The opinion of the Court in part states, 162 U.S. at page 373, 16 S.Ct. at page 833:

"The ground of the plaintiffs' right of action is the damage which has been caused them by the negligent act of the defendant, and, unless they are able to prove some damage, consequent upon such negligent act, the plaintiffs are not entitled to recover. This is not an action where they would be entitled to nominal damages if no damages whatever were in fact sustained or proved. They must prove the nature and extent of the damage, and if the property destroyed were not owned by them, and if they had no special property therein, and did not have possession thereof, it is entirely plain that no cause of action was proved. The plaintiffs claim that, so far as the defendant is concerned, they did prove property in the wood, and that such proof was made by showing that they were in posses-

sion thereof at the time of its destruction, and, as simple possession is prima facie evidence of right and title sufficient to support this action, the plaintiffs made out their case. It may be assumed that possession alone is sufficient, even in an action of this nature, in the absence of any evidence explaining that possession, or showing that plaintiffs had no title to the property. In this case the plaintiffs, in the course of making out their cause of action, showed the facts, which proved that they had neither the title nor the possession."

Similarly, the decision in the case of Murphy v. Sioux City & P. R. Co. rests principally upon the proposition that the plaintiff's right to recover for loss of hay cut on an unenclosed prairie owned by others must be based upon proof of general or special title, upon a claim against a defendant for negligently burning it. The view that, in the absence of ownership in the plaintiff no injury is done to him by destruction of the property, is emphasized in these decisions; also the view that the right to institute an action for damages in such a case is vested by law in the "real owner of the property and not in the one who without shadow of right is in possession thereof." See Mathews v. Great Northern Ry. Co. [7 N.D. 81, 72 N.W. 1086].

The texts and decisions cited by counsel for plaintiff in his brief all relate to actions in trespass against one who has wrongfully seized or directly injured the property of another, or for conversion of chattels, or in trover. The case of New England Box Co. v. C. & R. Constr. Co., 313 Mass. 696, 49 N.E.2d 121, 150 A.L.R. 152, appears to hold to the contrary, that possession being prima facie evidence of title is sufficient to maintain such an action against another for interference with that possession, and that a mere stranger who has no right in the property cannot set up such want of title as a defense. However, this decision fails to make the distinction noted; and also defines the word "possession" as in-

cluding "the right as against all persons to the immediate physical control of a chattel."

It does appear from these decisions that possession of a chattel may be prima facie evidence of title and where undisputed may be sufficient. In this case, however, proof was made in defense to the claim showing conclusively that plaintiff had no title, actual or constructive, in the dynamite in question. The evidence disclosed that this dynamite was part of a lot of some 800 cases left by a contractor for the U. S. Navy Department on Japonski Island, which property had been taken over by the Alaska Native Service, under the Department of Interior of the United States. Because of the extreme hazard and danger to the buildings and occupants of the A.N.S. hospital and school at Mt. Edgecumbe, the Superintendent arranged with plaintiff to turn and restack the dynamite stored in a magazine on the premises and remove "all leakers," in return for which plaintiff was to be given 20 cases of dynamite for his services. This was evidenced by a written memorandum of agreement (Defendants' Exhibit A). During the inspection plaintiff discovered a large number of cases believed to have been deteriorated in addition to those leaking, which were likewise removed with the consent of the Superintendent. Altogether some 700 cases were thus removed, all with the express understanding that they would be taken by plaintiff to his isolated mine near Chichagof, for disposal. Some were removed in 1948 and the remainder in the spring of 1949, at which time plaintiff was given an additional 20 cases. None of the good cases were stored in the magazine at the time of the collapse but these, and other cases, had been sold by plaintiff. Some were taken to Chichagof but 423 cases stored as above. Plaintiff claimed to have later received a "paper showing title" to the remainder but such was not produced and was wholly contradicted by other competent evidence. Under these circumstances we cannot find that plaintiff had any such title or spe-

cial property in the dynamite to entitle him to recover damages for its loss or destruction.

There was also considerable question as to whether or not the dynamite had any commercial value, as particularly shown by the deposition of Norman G. Johnson, technical expert of the explosives department of du Pont de Nemours & Co., who stated that leaking or deteriorated dynamite has no commercial value for any purpose. It is unnecessary to decide this point except to note that any claim of the plaintiff of the commercial value of the dynamite destroyed or damaged is hardly consistent with his right to removal of it from the magazine on Japonski Island as leaking or deteriorated dynamite.

■ Clearly, however, plaintiff is entitled to recover from the defendants the cost of removing the damaged dynamite from the magazine following its collapse, which collapse was due to the negligence of the defendants and which removal was made necessary by the extremely hazardous condition thus created. · Such right does not depend upon title to the property but rather upon the principle of trespass as above noted. There can be no doubt but that this work was extremely hazardous and difficult. It is clear that plaintiff was lawfully in possession of the powder magazine in which the dynamite was stored, upon an express permit from the Forest Service, U. S. Department of Agriculture, which permit had not expired and was not cancelled until after the collapse. Several witnesses, including Mr. Johnson and Mr. Phil R. Holbrook, Territorial Commissioner of Mines, refused to place a value on so hazardous an undertaking. The main problem here is as to the measure of such damage. Plaintiff employed three persons to aid in this work upon an agreement that he would pay them powdermen's wages, plus whatever additional amount the Court would allow for the extra-hazardous work. This was an unfortunate arrangement but I do not think too irregular as to render it invalid in view of the fact that action to recover the cost of such removal was then contemplated. The standard powdermen's wage was then $2.78 per hour. This is hardly sufficient for the type of work involved. Plaintiff testified that a reasonable wage would be $20 per hour, which, on the other hand, appears too arbitrary. No other evidence was adduced as to a fair rate of pay, although plaintiff earnestly endeavored to produce such proof.

The testimony disclosed that the plaintiff, Johnson, Lantry, and Perrin, together engaged in 514½ hours of work considered extra-hazardous and dangerous. It is not possible for the Court to arrive at a proper rate of pay for this work in the absence of any competent testimony, but this matter may be determined as hereafter set forth. Also that plaintiff further engaged in labor not considered extra-hazardous to the extent of 32 hours, and Johnson, Lantry and Perrin in the same work for 41 hours; plaintiff claims $3.50 per hour for the latter type of work and the other three the standard wage of $2.78 per hour. Plaintiff also claims 221 hours expense in trucking the dynamite away at $3 per hour, and $160.84 miscellaneous expenses and supplies.

■ On the matter of contributory negligence, we cannot find from the evidence that the plaintiff failed to exercise ordinary degree of care in storing the dynamite in the magazine or in failing to erect a sign indicating that explosives were stored therein. In this connection the provisions of the General Safety Code of the Territory of Alaska, promulgated by the Commissioner of Labor, have no relation to the storing of explosives for the safety of the public, but relate only to safe working conditions for employees.

■ Nor can we find from the evidence that the act of the defendants in removing the gravel was with wrongful design or purpose to damage plaintiff's property stored therein, or that such act was done wantonly or maliciously, such as to entitle the plaintiff to recover exemplary damages. In this connection plaintiff argues that although the defendant Commodore Bird testified that he did

not know that dynamite was stored in the magazine, which was undisputed, the fact that the other two partners were not called to testify justifies the "inference" that they knew that the dynamite was so stored; but we cannot indulge in any such presumption.

This cause is referred to Mr. J. A. Williams, former Superintendent, Alaska Juneau Gold Mining Company, Juneau, as Special Master, to hear evidence and determine a fair and reasonable value of the services of plaintiff and his employees in the extra-hazardous work of removing the damaged dynamite from the magazine, based upon rates of pay which were currently allowed in the vicinity for other hazardous occupations in March of 1953. Upon submitting the report of such Master and the approval of the report, judgment may be entered for plaintiff in accordance with such findings, together with the sum of $112 to plaintiff for his services in non-hazardous work, the sum of $113.98 to Messrs. Johnson, Lantry and Perrin for like services, the sum of $663 for expense in trucking, and $160.84 for miscellaneous expense and supplies, together, also, with plaintiff's costs and disbursements and an attorney's fee in accordance with Rule 45.