UNITED STATES *v.* SMITH. (No. 771.)

*(Circuit Court, D. Oregon.* April 21, 1882.)

1. **TIMBER ON PUBLIC LANDS IN OREGON.**

   The act of June 3, 1878, (19 St. 88,) giving permission to the residents of Colorado, Nevada, the territories, " and other mineral districts of the United States," to cut timber for certain purposes upon the mineral lands therein, does not apply to Oregon, but the subject of cutting timber on the public lands within such state is regulated by the act of the same date, (19 St. 89,) providing, among other things, for the sale of timber lands therein.

2. **MINERAL DISTRICT.**

   This term, as used in the first of the said acts of June 3, 1878, (19 St. 88,) has no application to Oregon, there being no such division or district of the state established either by law or common reputation.

3. **CUTTING TIMBER—WHO MAY AND WHAT FOR.**

   Under the act of June 3, 1878, (19 St. 89,) persons occupying the public lands in Oregon under the mining, pre-emption, or homestead laws of the United States may cut and use the timber thereon convenient for the purposes of such occupancy, and may also take other timber from the public lands, if need be, sufficient to maintain the necessary improvements on the lands so occupied; but any cutting or removing timber from the public lands otherwise than this, as with intent to dispose of or wantonly to destroy the same, is a trespass for which the party guilty of the same is liable, civilly and criminally. 19 St. 90.

Action to Recover Damages.

*J. F. Watson,* for plaintiff.

*John J. Balleray,* for defendant.

DEADY, D. J. This action is brought by the United States to recover from the defendant the sum of $10,000 damages for wrongfully cutting and carrying away certain timber, between January 1, 1879, and the commencement of the action, August 17, 1881, then being and growing upon that parcel of the unsurveyed public lands of the plaintiff situated in Baker county, Oregon, which, if surveyed, would be township 11 south, of range 40 east of the Wallamet meridian, with intent to dispose of the same; and for that he "did convert and dispose of the same."

The defendant, for answer to the complaint, denies the allegations thereof, and for a further answer says that at the time of committing the alleged unlawful acts the defendant was a citizen of the United States, over 21 years of age, and a *bona fide* resident of "a mineral district of the United States," consisting of Baker, Grant, Union, Umatilla, and Wasco counties, the same being "the fourth mineral district of the United States in the state of Oregon," and that while he was such a resident he did enter upon the unsurveyed tract of public land aforesaid, the same being within said mineral district, and "cut and remove therefrom a small number of trees growing thereon;" that said tract of land was mineral land, and not subject to entry under any law of the United States, "except for mineral entry;" that said trees were "cut and removed, and actually used, for building, agricultural, mining, and domestic purposes by defendant and others within said mineral district;" and that the cutting and removing of said trees constitute the trespass mentioned in the complaint. The plaintiff demurs generally to this defence.

The first act of congress which in terms authorized or permitted the cutting of timber upon the public lands by a private person for any purpose, was passed June 3, 1878, (20 St. 88,) and is entitled "An act to authorize the citizens of Colorado, Nevada, and the territories to fell and remove timber on the public domain for mining and domestic purposes." This act contains three sections. The first one authorizes any *bona fide* resident of the states aforesaid or either of the territories—naming them—"and all other mineral districts of the United States," "to fell and remove, for building, agricultural, mining, or other domestic purposes," any trees growing upon the public lands, "said lands being mineral," and not then subject to entry, "except for mineral entry;" subject to such regulations as the secretary

of the interior may prescribe for the protection of the timber upon said lands, and other purposes; with a proviso that the act should not "extend to railroad corporations." The second section makes it the duty of the officers of any local land-office, "in whose district any mineral land may be situated," to ascertain whether timber is cut or used upon such mineral lands, "except for the purposes authorized by the act," and to give notice thereof to the commissioner of the general land-office. The third section prescribes the punishment for a violation of the act, or the rules made in pursuance thereof.

The act is very loosely and unskillfully drawn, and abounds in unnecessary and indefinite phrases and clauses of the and-so-forth character. The privilege conceded by it is limited to citizens of the United States, "and *other* persons," resident in certain states and territories, naming them, "and all *other* mineral districts of the United States." It allows timber, "or *other* trees," to be cut for building, agricultural, mining, "or *other* domestic" purposes, subject to such regulations as the secretary of the interior may prescribe for the protection of the timber and undergrowth, "and for *other* purposes."

On the same day another act was passed, (20 St. 89,) entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada, and Washington territory." This act contains six sections. The first, second, and third ones provide for the sale of the "unsurveyed public lands" within these states and this territory not included in any reservations of the United States, valuable chiefly for timber or unfit for cultivation, which have not been offered for sale, in quantities not exceeding 160 acres, to one person or association, at the minimum price of $2.50 per acre; with a proviso that the act should not, among other things, authorize the sale of a "mining claim," or "lands containing gold, silver, cinnabar, copper, or coal." Section 4 provides "that after the passage of this act it shall be unlawful to cut, or cause or procure to be cut, or wantonly destroy, *any timber growing on any lands of the United States*" in the states or territory aforesaid, "or remove or cause to be removed any timber from such public lands with intent to export or dispose of the same;" * * * and that any person so offending shall, on conviction, be fined for every such offence not less than $100 nor more than $1,000, with a proviso that the act shall not "prevent any miner or agriculturist from clearing his land in the ordinary working of his mining claim, or preparing his farm for tillage, or from taking the timber necessary to support his improvements." Section 5 provides for the relief of persons prosecuted in said states and territory for the viola-

tion of the timber act of March 2, 1831, (4 St. 472; section 2461, Rev. St.,) and repeals section 4751 of the Revised Statutes, providing for the disposition of penalties and forfeitures incurred under said act or section, and directs that all moneys collected under that act shall be covered into the treasury of the United States. Section 6 provides that all acts and parts of acts inconsistent with such act are repealed.

In support of this plea or defence counsel for the defendant contends: (1) that the first-named act applies to Oregon, as well as the states and territories therein expressly named, because it is included in the phrase "all other mineral districts of the United States;" and (2) that the permission contained in the first section of such act to fell and remove timber is not limited to the land occupied by the party cutting or removing it, nor to the quantity needed for his individual use, but that it is a license to every resident of a "mineral district," so called, in the United States to fell and remove all the timber he may from any portion of the public lands in such district, whether mineral, agricultural, or timber, to be used by any one within the district for building, agricultural, mining, or other domestic purposes; and further, that the second act, although made applicable to Oregon by name, in no way affects or limits the operation of the first one therein. If this is the law, then all the timber on the public lands in Oregon may be cut and removed therefrom with impunity, provided it is not done for the purpose of being exported from the state or mineral district where cut. No adequate reason is given or suggested why congress should thus suddenly depart so far from the traditional policy of the government to preserve the timber on the public lands for the use of those to whom it might ultimately dispose of them.

The argument hinges upon the meaning and application of the phrase "mineral district." The use of it in the United States Statutes is new, and confined to this act. As a matter of fact, so far as appears, there is no section of this state known and defined as the mineral district. Being neither known in law or fact as the designation of any well-defined or exact locality, it is as void of meaning and incapable of application as the phrase "tree district," "stone district," "alkali district," or "water district." The title of the act does not contain the phrase, but limits its operation to the citizens of Colorado, Nevada, and the territories; and it is not probable that there was any thought in the mind of congress of extending it any further.

The phrase "mining district" is well known, and means a section of country usually designated by name and described or understood

as being confined within certain natural boundaries, in which gold or silver or both are found in paying quantities, and which is worked therefor, under rules and regulations prescribed by the miners therein, as the White Pine, the Humbolt, etc.

This term, and the thing signified by it, are also recognized by the United States Statutes. Sections 2319, 2324, Rev. St.; Copp, U. S. Min. Lands, 471.

There is no method of proceeding known to the law by which a district of country can be prospected, surveyed, and established, or declared to be a "mineral district." The ordinary surveys of the public lands do not include any examination or exploration of them for mineral deposits, the surveyor being only required "to note in his field book the true situation of all *mines,* salt licks, salt springs, and mill-seats which come to his knowledge." Sub. 7, § 2395, Rev. St.

By section 12 of the act of May 10, 1872, entitled "An act to promote the development of the mining resources of the United States," (17 St. 95; section 2334, Rev. St.,) it is provided that the surveyor general "may appoint in each *land* district, containing mineral lands, as many competent surveyors as shall apply for appointment to survey mining claims." This "land district" is a division of the state or territory, as the case may be, created by law, in which is located a land-office for the disposition of the public lands therein. There are four of them in this state. It is probable that these "land districts," in the mining states like Colorado and Nevada, were sometimes familiarly spoken of as "the mineral districts," from whence the phrase found its way into the act of June 3, 1878. But although there are "some mineral lands" and "mining districts" in Oregon, it is not known that there are any considerable or contiguous sections of the country to which the term "mineral district" could properly be applied, and it is certain that there is none to which it is applied by law. It may be admitted that the use of the general words "all other mineral districts of the United States," immediately following the enumeration of the particular states and territories mentioned, is some evidence of an intention by congress to extend the operation of the act beyond the limits of said states and territories. But the difficulty is that the language used has no definite signification or local application, and therefore must fail to have any effect for want of certainty. Besides, this act is one in favor of individuals and in derogation of the rights of the public—the whole people of the United States—to whom these lands and timber belong, and therefore is not to be enlarged by construction so as to include things or persons not

expressly enumerated, mentioned, or described therein with reasonable certainty. Smith, Com. § 738 *et seq.* For these reasons the act, in my judgment, is not applicable to Oregon, but is confined to the states and territories therein expressly mentioned.

By act No. 2 of the said acts of date of June 3, 1878, it is declared unlawful to cut *any* timber on *any* of the public lands in Oregon, with the exception of that cut by a "miner or agriculturist" in the ordinary working or clearing of his mining claim or farm, or that taken therefrom to support his improvements on such claim or farm. This provision is inconsistent with and repugnant to the license to cut timber contained in act No. 1. Either the prohibition contained in act No. 2 must be limited and restrained by construction so as not to apply to mineral land,—land subjected to "mineral entry,"—or act No. 1 must be held not applicable to Oregon. Both cannot be in full force in the same place. It may be said that No. 2, being subsequent in point of place in the statute, is presumed to have been passed subsequently to the other, and therefore repeals or modifies it so far as they are in conflict. But both acts being passed on the same day, and measurably upon the same subject, I think they may best be considered as parts of one act, and each be allowed to stand, and have effect as far as it can without conflict with the other. It cannot be said that, in passing act No. 1, congress expressly included Oregon in the license therein given to cut timber on the public lands, and it is only claimed that it contains some general words which may be interpreted so as to include it, while upon the very face of the act it is plain that, in the passage of No. 2, it was the intention of congress to regulate the subject of the sale and use of the timber upon any of the public lands in Oregon. This being so, the only reasonable conclusion is that act No. 2 excludes No. 1, even if there was any ground for holding the latter applicable to this state under any circumstances. The subject is fully regulated by the former act, and there is nothing left for the latter one to operate upon without displacing some provision of the other. The provision for the sale of timber lands, for the prevention of cutting timber on the public lands, and for allowing the miner and farmer to cut and use the timber on their claims, and to take it from the public lands for the improvement of such claims, cover the whole ground, and if allowed to be in full force here must exclude the Colorado act from the state.

The plea is insufficient. A defence to an action for unlawfully cutting timber on the public lands in this state must show that it was cut upon the mining or farming claim or land of the defend-

ant in the ordinary course of working the same or preparing it for tillage, as the case may be, or was taken from the public lands for the necessary improvements thereon. It does not appear from the plea herein that the defendant cut the timber in question from land then occupied by him for the purpose of mining or agriculture, or that it was cut from the public lands for maintaining the necessary improvements thereon.

From all that appears, the defendant was unlawfully engaged in cutting timber from the public lands, and is at least liable to the plaintiff in damages equal to the value thereof.

The demurrer is sustained.