## UNITED STATES *v.* EUREKA & P. R. Co.

*(Circuit Court, D. Nevada.    November 23, 1889.)*

PUBLIC LANDS—TIMBER—CUT FOR USE BY RAILROAD COMPANY.
  The defendant, a railroad corporation, purchased for use **upon its locomotives** and cars, wood severed from the public mineral lands.    *Held,* that such purchase and use was unlawful, and that the United States could recover from defendant the value of the wood so severed and purchased by it.

*(Syllabus by the Court.)*

At Law.    Replevin.
*J. W. Whitcher,* U. S. Atty., and *Henry Rivers,* for plaintiff.
*Wren & Chesney,* for defendant.

SABIN, J.    This is an action of replevin, brought by plaintiff to recover from defendant the possession of 2,000 cords of pine, cedar, and mahog-

any wood, or the value thereof, alleged at the sum of $10,000, in case recovery of possession of said wood cannot be had. The complaint alleges that said wood was severed from the public lands of plaintiff, in the state of Nevada, without the consent of plaintiff; that on or about December 1, 1888, at the county of Eureka, in said state, defendant wrongfully, unlawfully, and without plaintiff's consent took all of said wood from the possession of plaintiff, to its damage in said sum of $10,000. The answer of defendant denies plaintiff's ownership of said wood, or that there was more than 550 cords of the same; denies that it was severed from the public lands of the United States; denies that at the date alleged, or at any other time, defendant wrongfully, unlawfully, or without plaintiff's consent took all or any of said wood from the possession of plaintiff. It alleges that defendant is operating its railroad, running from the town of Eureka to the town of Palisade, in said Eureka county, a distance of about 85 miles; that the wood used upon its locomotives was not cut by defendant, but the same was delivered to it by residents of the state, along the line of said road, for use upon its locomotives, and in operating its railroad; denies that said wood was or is of any greater value than four dollars per cord. The case was tried by the court, without a jury. The whole case is summed up in the findings of fact, which are as follows:

"(1) That the defendant is and was at all the times mentioned in the complaint a corporation duly organized and existing under and by virtue of the laws of the state of Nevada, and engaged in doing business as a common carrier exclusively in the county of Eureka, in said state; that on the 1st day of December, A. D. 1888, and for a long time prior thereto, the above-named plaintiffs were, ever since have been, and now are, the owners of thirteen hundred cords of pine, cedar, and mahogany wood which lies along the line and within one hundred feet of the track of the Eureka & Palisade Railroad Company, in Eureka county, state of Nevada, between the towns of Eureka and Palisade, in said county, and at and between the various stations on said road between said towns, and which said wood was and is of the value of five thousand and two hundred ($5,200) dollars in gold coin of the government of the United States. (2) Said wood was severed from the public lands of the United States, which lands are situated within the state and district of Nevada, and are unsurveyed and mineral in character, and not subject to entry except for mineral entry; that said wood was so severed by *bona fide* residents of the state of Nevada, and by them sold to defendant. (3) That on or about the 1st day of December, A. D. 1888, at the county and state aforesaid, said defendant wrongfully, unlawfully, and without the consent of plaintiff took all of said wood into its possession, and now does wrongfully, unlawfully, and against the wishes of plaintiff withhold and detain from the possession of the plaintiff seven hundred and fifty (750) cords of said wood of the value of four ($4.00) dollars per cord; and there was seized at said time, under a writ of replevin, in said action, five hundred and fifty cords of the wood described in the complaint, which said five hundred and fifty cords of wood is now in the possession of the United States marshal in and for said district. Said five hundred and fifty cords of wood is of the value of four ($4.00) dollars per cord. (4) That during all of the times mentioned in the complaint the defendant owned and operated a railway between the towns of Eureka and Palisade, in said county and state, of about the length of eighty-five (85) miles; that during all of said times said railroad was largely engaged in the transportation of

the gold, silver, and lead products of the Eureka and other adjacent mining districts to a market, and in transporting mining and other supplies in said region. (5) That at all of said times all of the locomotives used upon said road were what is known as ' wood burners,' and that a considerable quantity of wood is necessarily consumed in operating said locomotives. (6) That said wood was cut from cedar trees of a length of from ten to twelve feet, including the branches, the bodies of which are from four to eight feet in length, and the largest of which do not exceed ten or twelve inches in diameter at the roots. That said trees are of a stunted, irregular growth, and unfit for timber, lumber, or manufacturing purposes. That said trees are valuable only for firewood and other domestic purposes. That said cedar trees, and trees of nut pine, and what is called ' mountain mahogany,' of similar character and dimensions as said cedar trees, comprise all the trees that grow upon said lands."

These findings of fact are admitted to be correct, as shown by the evidence submitted. Defendant seeks to justify its purchase and possession of said wood under an act of congress approved June 3, 1878, (20 U. S. St. p. 88, c. 150.) The first section of this act, and under which justification is sought, reads as follows:

"That all citizens of the United States, and other persons, *bona fide* residents of the state of Colorado or Nevada, or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories, or districts of which such citizens or persons may be at the time *bona fide* residents, subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes: provided, the provisions of this act shall not extend to railroad corporations."

Unfortunately for the defendant, the proviso contained in the last lines of the section renders it impossible for the court to entertain this defense. The proviso is clear, certain, and unambiguous. There is no place for interpretation or construction as to its meaning. It means just what it says: "The provisions of this act shall not extend to railroad corporations." No exceptions are made. It applies to all alike, and it must be enforced against all alike. If this defendant can, under this act, purchase and use this wood and timber, in like manner can every other railroad in the state do so. There are within the limits of the state nearly or quite 900 miles of railroads, to-wit: The Central Pacific, 448 miles; the Eureka & Palisade, 85 miles; the Nevada & Oregon, 28 miles; the Virginia & Truckee, 52 miles; the Carson & Colorado, 192 miles; the Nevada Central, 93 miles. There are other projected lines of road which may be built in the near future. If any one of these companies can, under this act, obtain its supply of fuel from the public lands of the United States, then all can, and it matters not whether the lands are mineral or non-mineral lands from which the fuel is severed. This act, the first section of which is above quoted, originated in the senate. The

discussion of the bill in the senate was thorough and animated. The bill passed that body, and went to the house of representatives. There it was amended in some respects, and, among others, by the addition of the proviso above quoted. This amendment was adopted in the house without discussion. The bill was returned to the senate, and there the amendment was accepted and adopted without debate. 7 Cong. Rec., 45th Cong., 2d Sess., pt. 4, pp. 3328 and 3450. This shows the unanimity of congress on this subject. The proviso had only to be suggested to be adopted by both houses without debate. It is the duty of the courts to enforce this statute without equivocation. Without positive license by statute, or other competent authority, no person or corporation can lawfully cut or use the timber cut upon the public lands, be they mineral lands or otherwise. The United States, as proprietor of the public lands, may call upon the courts, by injunction, and by all other appropriate remedies, to stay and prevent waste and spoliation of the public domain, and to enforce any statutes, penal or other, enacted for that purpose. The policy of this amendment or proviso, its seeming hardship upon railroads, is pressed upon the attention of the court. The policy of a statute, its severity or hardship or inconvenience, is a matter for the consideration of congress, not of the courts. Courts are to enforce laws, not make them; to execute, not avoid them. I am not, however, inclined to question the wisdom and prudence of this proviso to this statute. The supply of timber, even for fuel, in Nevada, is limited, and not evenly distributed. The consumption of fuel by railroads is large and constant. If they are permitted to denude the public lands of the fuel thereon, the act of congress referred to becomes of little benefit to the people of the state, and the result would be that the railroads, and the people also, residents of the state, would ere long be compelled to seek their fuel supplies from abroad and beyond the limits of the state. This would be very oppressive to the great mass of the people of the state. It is, however, not a difficult matter for the railroad companies, having their own ample means of transportation, to procure their fuel supplies from lawful sources. This timber and wood mentioned in the statute is by the statute devoted to the lawful uses of the people, *bona fide* residents of the state, to aid in the material development of the various industries of the state. The statute is beneficent in its purpose and object, but from its benefits all railroads are excluded. It may be a serious question if those persons that cut this wood upon the public lands, and sold and delivered it to the defendant, are not subject to criminal prosecution for so doing. It was not cut by them for a lawful purpose. It was cut in defiance of the statute, unlawfully and wrongfully, and in so cutting and removing it they acquired no title thereto as against the rightful owner, the United States. And the defendant, in purchasing this wood from parties having no lawful title thereto, acquired no title that can be maintained against the rightful owner, the plaintiff in this action.

Judgment must be entered for the plaintiff for the recovery of the possession of 1,300 cords of wood mentioned in the complaint, or for the

value thereof in case delivery of possession cannot be had, at the sum of $4 per cord, amounting in the aggregate to the sum of $5,200, lawful money, and for costs, and it is so ordered.