[Civil No. 690.    Filed March 28, 1900.]

[60 Pac. 885.]

UNITED STATES OF AMERICA, Plaintiff and Appellant, v. THE COPPER QUEEN CONSOLIDATED MINING COMPANY, a Corporation, Defendant and Appellee.

1. PUBLIC LANDS—MINERAL LANDS—WHAT CONSTITUTES—RIGHT TO CUT TIMBER—ACT CONG. JUNE 3, 1878, CONSTRUED.—Mineral in sufficient quantities to justify exploration and development, and in quantities which it will pay to work, must be shown to exist, and the existence thereof in the land must be demonstrated as a present fact, in order to justify the cutting of timber therefrom, or the purchase of such timber after being cut, under the act of June 3, 1878, providing that certain persons are "hereby authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or trees growing or being, on the public lands, said lands being mineral and not subject to entry . . . except for mineral entry."

2. APPEAL AND ERROR—VERDICT—WILL NOT BE DISTURBED IF ANY EVIDENCE TO SUSTAIN.—Evidence having being given on the trial as to the mineral or non-mineral character of the land in controversy, and there being evidence to support the verdict, the same will not be disturbed on appeal.

3. PUBLIC LANDS — TIMBER — BONA FIDE RESIDENTS MAY CUT — ACT CONG. JUNE 3, 1878, CONSTRUED.—The act, *supra,* providing that "All citizens of the United States and other persons *bona fide* residents," etc., includes aliens as well as citizens, provided that they be *bona fide* residents of the states, territories, and districts mentioned, among the persons authorized to fell and remove any timber or other trees on the public mineral lands.

4. SAME — SAME — EVIDENCE — BONA FIDE RESIDENCE—WHAT CONSTITUTES—ACT CONG. JUNE 3, 1878, CONSTRUED.—The statement that witness "moved" into Rock Creek in 1883, having reference to his change of residence, in connection with the fact that he was for ten years engaged in an extensive lumbering business at Rock Creek, is sufficient to establish his *bona fide* residence within the territory so as to give him the privilege of cutting timber on mineral lands, as provided in act of June 3, 1878.

5. SAME—SAME—SECRETARY OF INTERIOR—AUTHORITY AND LIMITATIONS IN MAKING RULES AND REGULATIONS UNDER ACT CONG. JUNE 3, 1878.—The act of June 3, 1878, regarding the cutting of timber on mineral lands gives the secretary of the interior authority to make rules and regulations; and so far as they may relate to the protection of the timber and of the undergrowth growing upon such mineral lands and for other purposes, they have the effect of law. But it does not follow that the secretary of the interior may prescribe from what lands timber may be cut, or in any way enlarge or detract from the privileges granted in said act.

AFFIRMED. 185 U. S. 495, 46 L. Ed. 1008.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. George R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

Robert E. Morrison, U. S. District Attorney, and Thomas D. Bennett, Assistant U. S. District Attorney, for Appellant.

The defendant was required to show that Ross was a citizen and a *bona fide* resident. *Northern Pacific Ry. Co.* v. *Lewis*, 162 U. S. 366, 16 Sup. Ct. 831; *United States* v. *Legg*, Compilation of Timber Laws, 1897, p. 63; *United States* v. *Tipton*, Compilation of Timber Laws, 1887, p. 55.

William Herring (Sarah H. Sorin, of Counsel), for Appellee.

The strict rule invoked by plaintiff and set forth in the instructions to the jury given at its request, that in order to constitute "mineral lands" the land must be shown to contain mineral of commercial value,—that it must be land which it will pay to mine by the usual modes of mining,—is a rule which applies only to contests of parties claiming the land for different purposes, and which is not applicable in

determining what lands are subject to location and entry as mineral lands, under the mining laws of the United States, or determining what lands are mineral lands within the meaning of the statute of June 3, 1878. *Migeon* v. *Montana Cent. Ry. Co.*, 77 Fed. 240; *Book* v. *Justice Min. Co.*, 58 Fed. 124; *Shreve* v. *Copper Bell Min. Co.*, 11 Mont. 309, 28 Pac. 315.

A *bona fide* resident of the territory of Arizona is expressly authorized to cut timber on the public mineral lands, and it is immaterial whether the evidence discloses that such resident was also a citizen or not. *United States* v. *Smith,* 11 Fed. 487, 8 Saw. 101; *United States* v. *Eureka and P. R. Co.*, 40 Fed. 419; *United States* v. *Richmond Min. Co.*, 40 Fed. 415.

The act of Congress of June 3, 1878, does not empower the secretary of the interior to prescribe rules and regulations which limit or abridge the privileges conferred by that statute, and any rule or regulation of the secretary of the interior in relation to cutting timber on the public mineral lands which impairs the license granted by that act is unconstitutional and void. The interpretation placed upon the public-land acts by the secretary of the interior is not binding upon the courts. *Wisconsin Cent. R. Co.* v. *Forsythe,* 159 U. S. 61, 15 Sup. Ct. 1020; *Northern Pac. R. Co.* v. *Colburn,* 164 U. S. 383, 17 Sup. Ct. 98; *Lake Superior Ship R. and I. Co.* v. *Cunningham,* 155 U. S. 354, 15 Sup. Ct. 103; *Irvine* v. *Marshall,* 20 How. 567; *United States* v. *Murphy,* 32 Fed. 376; *United States* v. *Dickson,* 15·Pet. 141.

The question as to the existence of mineral in the lands upon which the timber was cut and the question of its quantity and value were matters of fact for the determination of the jury. As to the character of the land, their verdict is conclusive. *United States* v. *Edwards,* 38 Fed. 812; *Book* v. *Justice Min. Co.*, 58 Fed. 106; *Blue Bird Min. Co.* v. *Largey,* 49 Fed. 289; *Iron Silver Min. Co.* v. *Mike & Starr G. and S. Min. Co.*, 143 U. S. 394, 12 Sup. Ct. 543; *United States* v. *Saucier,* 5 N. Mex. 569, 25 Pac. 791.

SLOAN, J.—The United States, on March 6, 1895, brought suit in the district court of the first judicial district against one D. D. Ross and the Copper Queen Consolidated Mining Company, a corporation, to recover the sum of $183,070.50, the value of certain timber alleged to have been wrongfully

cut and removed from the public lands of the United States by said defendants. A trial was had in November, 1895, which resulted in the disagreement of the jury, whereupon the further trial of the case was continued until the twenty-fifth day of May, 1898, when the plaintiff was granted leave to file, and did file, an amended complaint, which, omitting the title of the court and the cause, was as follows: "(1) The defendant the Copper Queen Consolidated Mining Company is a corporation organized and existing under and by virtue of the laws of the state of New York, and doing business in the county of Cochise, territory of Arizona. (2) That said defendant wrongfully cut and caused to be cut and removed from the surveyed and unsurveyed public lands of the United States of America a large quantity of timber, to wit, five millions nine hundred and five thousand five hundred feet of timber. (3) That said timber was by the defendant wrong-fully cut and caused to be cut from the following surveyed and unsurveyed public lands of the United States of America, to wit: That certain land lying in a cañon in the Chiricahua Mountains in, east of, and adjacent to townships seventeen and eighteen south, ranges twenty-nine and thirty east of Gila and Salt River base and meridian, about sixty miles southeast from the town of Willcox, on the Southern Pacific Railway, and on what is known as 'Rock Creek,' all in the county of Cochise, territory of Arizona. (4) That the value of the tim-ber so wrongfully cut and caused to be cut and removed from the said public lands of the United States of America was the sum of thirty-one dollars per thousand feet, and of the aggre-gate value of one hundred and eighty-three thousand seventy and fifty one-hundredths dollars ($183,070.50) lawful money of the United States of America. (5) That all of said tim-ber aforesaid wrongfully cut and caused to be cut and re-moved from the surveyed and unsurveyed public lands afore-said by defendant belonged to and was the property of the United States of America, and all said timber was cut, re-moved, taken by, delivered to, and used and consumed by defendant Copper Queen Consolidated Mining Company. (6) That at the time the timber aforesaid was wrongfully cut, caused to be cut, removed, taken by, delivered to, and used and consumed by the defendant from the lands afore-said, the said lands were surveyed and unsurveyed public

lands of the United States of America, and defendant well knew that said timber was the property of the United States, and was wrongfully cut, caused to be cut, removed, taken by, delivered to, and used and consumed by defendant Copper Queen Consolidated Mining Company. Wherefore plaintiff prays judgment against defendant for the sum of one hundred and eight-three thousand seventy and fifty one-hundredths dollars ($183,070.50) lawful money of the United States of America, and for its costs and disbursements in this action incurred." To the amended complaint the defendant company filed its answer, denying that it had cut or removed, or caused to be cut or removed, the timber, or any of the timber, mentioned in the complaint; and further denying that the said timber, or any part of it, was cut upon the surveyed public lands of the United States; but alleging that one Daniel D. Ross, formerly made defendant in the action, but since deceased, cut and removed, and caused to be cut and removed, from the unsurveyed public lands of the United States lying in a cañon in the Chiricahua Mountains, known as "Rock Creek," and within the county of Cochise, the quantity of timber mentioned in the complaint; that this timber was sold and delivered to it by said Ross at the town of Bisbee, in said territory, and was used and consumed by it wholly for mining and other domestic purposes within the territory. The answer further alleged that Ross cut and removed said timber from the public mineral lands of the United States under the authority of the act of, Congress of June 3, 1878; that said Ross, at the time he so cut and removed said timber, was a citizen of the United States of America, and that at the time both the defendant and said Ross were *bona fide* residents of the territory; that the portion of the said Chiricahua Mountains from which said timber was cut and removed was not subject to entry under the existing laws of the United States, except for mineral entry; that said land from which said timber was cut was within the organized mining districts, and was in the vicinity of and adjacent to valuable known and recognized mines, and was and is mineral land within the meaning of said act of Congress. The cause was tried to a jury upon the amended complaint and answer, and a verdict found for the defendant. The United States appeals from the order overruling its motion for a new trial and from the judgment.

The act of Congress of June 3, 1878, reads as follows: "All citizens of the United States and other persons, *bona fide* residents of the state of Colorado, or Nevada, or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories, or districts of which :  a citizens or persons may be at the time *bona fide* re :irle  is, subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes: provided, the provisions of this act shall not extend to railroad corporations." The appellant assigns as error that the proof in the case failed to show authority on the part of Ross or the defendant to fell and remove the timber in question, for the reason that it was not shown that the lands from which said timber was taken were of the class of lands mentioned in said act, in that it was not shown that said lands were "mineral, and not subject to entry under existing laws of the United States, except for mineral entry." Upon this subject the trial court charged the jury as follows: "Proof of the existence of some measure of minerals in the lands from which the timber was cut, or proof of traces, indications, or possibilities that said land contained valuable mineral deposits, or that the lands in question are high, rugged, rough, and precipitous, cannot in itself impress said lands with a mineral character. Mineral in sufficient quantities to justify exploration and development, and in quantities which it will pay to work, must be shown to exist, and the existence thereof in the land must be demonstrated as a present fact, in order to justify the cutting of timber therefrom, or the purchase of such timber after being cut, under the act of June 3, 1878. The mere fact that portions of the land from which the timber was cut contained particles of gold or other valuable mineral deposits, or veins of gold-bearing quartz, would not necessarily impress it with the

character of mineral land as herein defined, and within the meaning of the act of June 3, 1878. It must, at least, be shown that said lands contained metals in quantities sufficient to render it available and valuable for mining purposes.'' These instructions embrace a full and accurate definition of the term ''mineral land,'' as used in said act of Congress and other statutes of the United States. A mass of testimony was introduced at the trial on the part of the defendant and on the part of the plaintiff tending to show, on the one part, the mineral character of the land, and, on the other, the non-mineral character of the land. A consideration of the evidence satisfies us that the geological conditions exist at the place where the timber was cut which render it probable that mineral in paying quantities may exist; that discoveries of mineral of more or less value have been made, but that it is still to some extent problematical as to whether paying mines will ever be discovered and developed thereon. Before, however, disturbing the verdict upon the ground of the insufficiency of the evidence, it ought to appear that, conceding the testimony adduced by the defendant to show the mineral character of the lands to be true, the fact is still unproven. We cannot say, from a consideration of the evidence, that the jury disregarded the law defining the term ''mineral lands,'' as used in the act of June 3, 1878, or that their finding that the lands in question were mineral in character is not justified by the evidence.

It is contended by counsel for appellant that the verdict of the jury should be set aside, and a new trial granted, because the defendant failed to prove that D. D. Ross, who was shown to have cut and removed the timber in question, and from whom the defendant purchased the same, was a citizen of the United States and a *bona fide* resident of the territory. The contention on the part of the appellant is, that the authority granted in said act of June 3, 1878, is limited by the terms of the act to a citizen of the United States who is also at the time a *bona fide* resident of the territory. The language of the act is, ''All citizens of the United States and other persons *bona fide* residents,'' etc. The language used can have no other meaning than as including aliens as well as citizens, provided they be *bona fide* residents of the states and territories and districts mentioned, among the persons

thus authorized to fell and remove any timber or other trees on the public mineral lands. No case has been cited by appellant in which any of the federal courts have construed the act of June 3, 1878, as limiting the authority to cut timber therein granted to those persons who are both citizens and *bona fide* residents of the states, territories, or districts mentioned. While *dicta* may be found which would imply that this construction has been given, it does not appear that the precise question as to whether an alien who is a *bona fide* resident of one of the states or territories named is prohibited by the terms of said act of June 3, 1878, from cutting timber upon public mineral lands. The case of *Railroad Co.* v. *Lewis*, 162 U. S. 366, 16 Sup. Ct. 831, 40 L. Ed. 1002, cited by counsel for appellant, did not involve the question in point, in that the persons charged with having cut the wood which was the subject-matter of the action were both citizens of the United States and residents of Montana, where the cutting was done. The learned justice who wrote the opinion in that case, we think inadvertently, in stating in general terms the provisions of the act of June 3, 1878, omitted to give any meaning to the term ''and other persons'' used in the act. *Dicta* may be found in other decisions construing the act as we are construing it. *United States* v. *Smith,* (C. C.) 11 Fed. 487; *United States* v. *Eureka and P. R. Co.,* (C. C.) 40 Fed. 419; *United States* v. *Richmond Min. Co.,* (C. C.) 40 Fed. 415. Holding, therefore, as we do, that a *bona fide* resident of the territory, whether he be a citizen or not, is privileged to cut timber from the public mineral lands, by the terms of said act, the failure of the defendant to prove the citizenship of Ross is of no consequence. Ross, in his deposition introduced at the trial, stated that he had ''moved'' into Rock Creek in 1883, and began the cutting of timber, and continued to cut timber and supply the defendant with the same until 1893. The term ''moved,'' as used by Ross, in its connection no doubt had reference to his change of residence. This, in connection with the fact that he was for ten years engaged in an extensive lumbering business at Rock Creek, is sufficient, in our judgment, to establish his *bona fide* residence within the territory.

The appellant requested the trial court to instruct the jury as follows: ''You are further instructed that by virtue

of said act, and pursuant to the authority therein imposed, the secretary of the interior thereafter prescribed certain rules and regulations, which thereupon became laws of the same force and effect as the statute itself. That portion of the said regulations to which the defendant must conform in order to justify under the license granted by the statute, and which is applicable to the facts in this case, is found in the first, second, and third paragraphs of said regulations, and is as follows: (1) The act applies only to the states of Colorado and Nevada and the territories of New Mexico, Arizona, Utah, Wyoming, Idaho, and Montana, and other mineral districts of the United States not specially provided for. (2) The land from which timber is felled or removed must be known to be of strictly mineral character, and that it is not subject to entry under the existing laws of the United States except for mineral entry. (3) No person, not a citizen or *bona fide* resident of a state, territory, or other mineral district provided for in said act, is permitted to fell or remove timber from mineral lands therein. And no person, firm, or corporation felling or removing timber under this act shall sell or dispose of the same, or the lumber manufactured therefrom, to any other person than citizens and *bona fide* residents of the state or territory where such timber is cut, nor for any other purpose than the legitimate use of said purchaser for the purposes mentioned in said act." This instruction was refused, and the refusal is made the basis for an assignment of error by appellant. It is true that the rules and regulations prescribed by the interior department by the terms of the act of June 3, 1878, so far as they may relate to the protection of the timber and of the undergrowth growing upon such mineral lands, and for other purposes, have the effect of law. But it does not follow that the secretary of the interior may prescribe from what lands timber may be cut, or in any way enlarge or detract from the privileges granted in said act. The trial court did instruct the jury fully as to the provisions of the act of June 3, 1878. The instructions asked, as being a portion of the regulations imposed by the secretary of the interior, in effect were given by the court in other instructions, except that in the second paragraph of the regulations given in the instruction the term "strictly mineral" is used in defining the character of

the land from which timber may be felled. If the term
"strictly mineral," as used in the regulation of the secretary,
is to be construed as in any manner modifying or limiting the
act of June 3, 1878, the instruction was properly refused,
for the reason that under the terms of the act it is not within
the province of the secretary to make any such regulation.
The act itself determined from what kind or character of
lands timber might be cut. If we construe the term "strictly
mineral" to mean nothing more than lands upon which tim-
ber may be cut shall be mineral, and not subject to entry
under existing laws of the United States except for mineral
entry, the definitions given by the court in his other instruc-
tions, some of which we have given, fully covered the ground,
and there was no necessity or propriety in further charging
the jury upon this subject. The refusal of the trial court to
give the instruction asked constitutes no ground of error.
The judgment is affirmed.

Street, C. J., and Doan, J., concur.