UNITED STATES v. ENGLISH et al.

(Circuit Court, D. Oregon. April 4. 1901.)

No. 2,597.

1. PUBLIC DOMAIN—CUTTING AND REMOVAL OF TIMBER—ACTS AUTHORIZING—CONSTRUCTION.

The act of June 3, 1878, authorizing citizens and residents of the states of Colorado, Nevada, and the territories, and "all other mineral districts of the United States," to fell and remove timber on the public domain, does not apply to the state of Oregon, there being no such mineral district.

2. SAME—ACT PROHIBITING—CONSTRUCTION—CUTTING FOR USE IN QUARTZ MILL.

The proviso to the act of June 3, 1878, § 4, prohibiting the cutting and removal of timber on the public domain, provides that it shall not prevent any miner from clearing land in working his claim. or from taking timber to support his improvements. Held, that the taking of the timber for use in a quartz mill adjacent to the land from which it was cut was not within the proviso, and hence was prohibited by the act.

3. SAME—QUESTION OF WILLFUL TRESPASS—IMPOSITION OF PENALTY.

As the unlawfulness of cutting for use in a quartz mill adjacent to the lands from which it is taken is fairly open to question, under the act,—the precise question never before having been decided,—a cutting for such a purpose will not be held to be willful, and hence the penalty prescribed therefor will not be imposed. but the trespassers will be held liable only for the actual value of the wood in the trees.

John H. Hall, U. S. Dist. Atty.

John L. Rand and Lionel R. Webster, for defendants.

BELLINGER, District Judge. This is an action by the United States to recover the value of 1,684 cords of wood alleged to have been unlawfully cut upon the public domain. The wood was used by the defendants in their quartz mill, at what is known as the "Golconda Mill," in Eastern Oregon. Two defenses are made: First, that the wood was cut from some placer mining claims owned by the defendants in the vicinity of their mill, preparatory to the working of such claims; and, second, that the defendants have a

right to take from the public domain wood necessary in the conduct of their milling business.

As to the first of these defenses, I am satisfied that the defendants are not the owners, in good faith, of the alleged placer claims, and that the title so asserted is a mere pretense to justify taking the timber from the land claimed as placer mining ground.

By the act of June 3, 1878, which is entitled "An act authorizing the citizens of Colorado, Nevada and the territories to fell and remove timber on the public domain for mining and domestic purposes," it is provided:

"That all citizens of the United States and other persons, bona fide residents of the state of Colorado, or Nevada, or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories, or districts of which such citizens or persons may be at the time bona fide residents, subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes: provided, the provisions of this act shall not extend to railroad corporations."

Upon the argument it was claimed that the defendants were entitled, under this act, to cut the timber in question. But this act does not in terms apply to the state of Oregon; and it has been held that the phrase "other mineral districts of the United States" is not intended to include the state of Oregon, there being no such mineral district. U. S. v. Smith (C. C.) 11 Fed. 487; U. S. v. Benjamin (C. C.) 21 Fed. 285.

The question of defendants' liability depends upon the construction to be given to another act of congress, approved June 3, 1878, entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada, and in Washington territory." Section 4 of this act is as follows:

"That after the passage of this act it shall be unlawful to cut, or cause or procure to be cut, or wantonly destroy, any timber growing on any lands of the United States, in said states and territory, or remove, or cause to be removed, any timber from said public lands, with intent to export or dispose of the same; and no owner, master, or consignee of any vessel, or owner, director, or agent of any railroad, shall knowingly transport the same, or any lumber manufactured therefrom; and any person violating the provisions of this section shall be guilty of a misdemeanor, and, on conviction, shall be fined for every such offense a sum not less than one hundred nor more than one thousand dollars: provided, that nothing herein contained shall prevent any miner or agriculturist from clearing his land in the ordinary working of his mining claim, or preparing his farm for tillage, or from taking the timber necessary to support his improvements, or the taking of timber for the use of the United States; and the penalties herein provided shall not take effect until ninety days after the passage of this act."

It is contended for the defendants that this is a case of the taking of timber from the public domain necessary to support their improvements, and that it is within the proviso of the section just quoted. The land department by its instructions interprets the proviso in this act to authorize the taking of timber not only from

the mines and farms of the agriculturist and miner, but, when the required quantity is not obtainable therefrom, from other public lands near by. It is clear, I think, that taking timber from public lands for the use the defendants made of this wood is not to support improvements, within the meaning of the proviso of section 4 of the act of 1878. The use that is here made of this timber is for the conduct of a permanent business. The use is not an improvement. It is not in support of, and has nothing to do with, an improvement In the case of U. S. v. Hacker (C. C.) 73 Fed. 292, it is held that an indictment under this section which does not allege that the defendant intended to export or dispose of the timber cut upon public land is fatally defective. The court was of the opinion in that case that the phrase "with intent to export or dispose of the same" has reference not only to the removal of the timber, but to the cutting of it; and it seems to follow from this ruling that the cutting or procuring to be cut of timber, or its removal, is not a crime, unless what is done is with the intent to export or dispose of the same. And it is argued in defendants' behalf from this that these defendants are authorized to cut timber, or procure it to be cut, from the adjacent public lands, for use in their quartz mill. It would seem from the construction that has been given to this statute that the act of the defendants is within neither the proviso which authorizes the taking of timber, nor the prohibition of the section which makes the taking a crime. In other words, the timber in this case was not cut for export or sale, nor was it taken by the miner for the necessary support of his improvements. Nevertheless, I am of the opinion that this section must be given such a construction as will prohibit the taking of timber from the adjacent public lands by a miner or agriculturist in any case not within the proviso in this section. The statute is intended to preserve the timber upon the public domain against the cutting or taking for any purpose other than that of clearing the land of the agriculturist, or in the ordinary working of the mining claim of the miner, or for the purpose of supporting the necessary improvements of each, and this is not such a case.

The testimony in the case shows that the value of the wood in the tree was 50 cents per cord. When cut it was worth on the ground $1.50 per cord, and at the mill $3. I am of the opinion that the acts of the defendants were not willful. They cut and hauled this wood away in the belief that under the law they had a right so to do. The provision in section 4 of the act of 1878, by which the unlawfulness of timber-cutting is made to depend upon an intention to export and dispose of the same, leaves it fairly open to question, notwithstanding the provisos which follow, whether timber may not be cut for use at a quartz mill located on lands adjacent to those from which the timber is cut. The precise question has never before been decided, so far as I am advised; and, in the absence of a decision adverse to such a claim, I am not disposed to hold the conduct of the defendants willful, in cutting the timber in question. The total amount cut is 1,684 cords, for which the defendants should be charged at the rate of 50 cents per cord.